

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00083-CR

SIRENA DOROTHY SIMMONS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28171

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Sirena Dorothy Simmons appeals her conviction of possession of a controlled substance with intent to deliver. Trooper Jay Simpson, with the Texas Department of Public Safety (DPS), detained a car driven by Leonard Davis, Simmons' cousin, in Hunt County, Texas, for traveling at sixty-eight miles per hour in a sixty-five-mile-per-hour speed zone.[1] Simmons was a passenger in the vehicle.

After Simpson conducted brief interviews of Davis and Simmons, Davis consented to the search of the rental[2] car. When Simpson discovered, in the spare tire well, a plastic bag containing 2,949.69 grams of cocaine, Simpson drew his gun and ordered Davis[3] to get on the ground. Instead of complying, Davis fled the scene. While Simpson and Trooper Phillip McKenzie[4] pursued and apprehended Davis, Simmons fled from the scene. Several hours later, McKenzie apprehended Simmons at an Exxon gas station approximately one-half mile from the scene of the traffic stop.

Simmons argues there are insufficient affirmative links to establish that she had actual or constructive possession of the cocaine. We affirm.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the

---

[1]At the time, the speed limit along this stretch of highway changed depending on the time of day and was sixty-five miles per hour at night. Davis argued with Simpson about whether he was speeding and claimed he had his cruise control set at seventy-miles-per-hour.

[2]Simpson testified drug traffickers often use rental cars.

[3]Davis had been ordered to stand to the side of the patrol car. Simmons remained in the car.

[4]McKenzie, with DPS, arrived at the scene while Simpson searched the car.

2

essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

At trial, the State was required to prove that Simmons exercised control, custody, management, or care over the drugs and that she knew the matter possessed was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2013). Unless the accused had exclusive possession of the place where the controlled substance was found, the State must present "additional independent facts and circumstances which affirmatively link the accused to the contraband" in order to prove possession beyond a reasonable doubt. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981).

Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. Presence or proximity to drugs, however, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care provided the proof amounts to more than a strong suspicion. *Id.* "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs."

3

*Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Texas courts have recognized the following as affirmative links used to establish a person's possession of contraband:

> (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt.

*Wright v. State*, 401 S.W.3d 813, 818–19 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see Evans*, 202 S.W.3d at 162 n.12. Possession may be established by proving either actual or constructive possession. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Further, it is well established that an accused may jointly possess contraband with another and possession does not need to be exclusive. *Id.*

The State argues, "There were three strong affirmative links between Appellant and 2,949.69 grams of Cocaine found in the trunk area of the rental car [in which] Appellant was a passenger." The State argues these affirmative links are (1) the location of Simmons' suitcase near the contraband, (2) conflicting statements, and (3) consciousness of guilt as demonstrated by fleeing and nervousness. Simmons claims she merely accepted a ride from her cousin and did

4

not know about the contraband. Simmons points out that the police found no large amounts of cash or contraband on her person or close to the passenger seat.[5]

The State does not explain how the location of Simmons' suitcase tends to connect her to the contraband. Under certain circumstances, the location of a suspect's property may tend to connect the suspect to contraband. For example, contraband found near a suspect's luggage might indicate either that the contraband fell out of the luggage or that the suspect placed all of his property together. Either situation would tend to connect the contraband to the suspect. We are not persuaded that the location of Simmons' suitcase near the contraband under the circumstances of this case tends to connect Simmons to that contraband. The contraband was located in the spare tire wheel well of the trunk. Although Simmons' luggage was also located in the trunk, the trunk is the usual location for a suitcase. Simpson acknowledged that there was a cover on the spare tire well concealing the drugs. This cover prevents a conclusion that the contraband fell out of Simmons' luggage or an association indicating the Simmons placed all of her property together. The fact that Simmons' suitcase was also located in the trunk has little—if any—tendency to connect Simmons to the contraband.

The State also alleges that the conflicting statements have some tendency to connect Simmons to the contraband. Simpson separated Davis and Simmons, who was a passenger in the vehicle, to conduct separate interviews. Davis, who had a New Jersey driver's license, claimed to have been visiting Simmons' grandmother, who was receiving hospice care. When Simpson asked Davis if Simmons' grandmother had passed away, Davis claimed that she had. Simmons

---

[5]Monty Posey, a sergeant with the DPS, testified that he conducted an inventory search of the vehicle and discovered no additional contraband.

claimed to have been visiting Texas because her brother was involved in a motorcycle accident. When asked about her grandmother, Simmons' claimed her grandmother was still alive. On cross-examination, Simpson agreed Davis' and Simmons' stories "matched up with the exception of whether or not the grandmother had passed or not passed." Even viewed in a light most favorable to the prosecution, we find little connection between this conflict and Simmons alleged possession of the contraband.

The State argues Simmons' nervousness indicates a consciousness of guilt. There are two problems with this argument. First, the record contains sparse evidence that Simmons was nervous. The only evidence of nervousness we have been directed to is Simpson's testimony stating,

> You know, based on my training and experience, sir, I look at people's body language, and I try to determine how -- how excited they are. And I do that through looking at their neck -- I can't say that -- that carotid artery that's in their neck, at their blood pressure, and it kind of tells me something suspicious.
> And in doing that, I could see when I came back up there and started to grab stuff, when I was looking at her tattoo, that something's not right here. Again, that sixth sense that you pick up on.

The State characterizes this testimony as evidence that Simmons was nervous. Simmons characterizes this testimony as merely an opinion that Simmons was suspicious. While excessively nervous behavior has long been recognized as an example of consciousness of guilt, Texas courts—including this one—have also observed that most people are somewhat nervous when confronted by a police officer; nervousness is a tenuous link to the contraband. *Lassaint v. State*, 79 S.W.3d 736, 744 (Tex. App.—Corpus Christi 2002, no pet.); *Hernandez v. State*, 867

6

S.W.2d 900, 905 (Tex. App.—Texarkana 1993, no pet.). Although Simmons' nervousness is an affirmative link to the contraband, the link is tenuous.

The last affirmative link argued by the State is that Simmons fled the scene to avoid arrest. Simmons claims her flight should not be considered because she only fled the scene out of fear of Simpson. On cross-examination, Simpson admitted he shouted, "[Y]ou're going to die," as he chased Davis with a drawn gun. Simmons claims she fled due to this threat. A rational juror could have disbelieved Simmons for two reasons. First, Simpson explained that he was referring to the dangers of running across an interstate highway and was not making a threat. Second, another officer, McKenzie, had arrived at the scene, and his presence would have mitigated any fears concerning a rogue officer. To give proper deference to the jury verdict, we are required to view the evidence in a light most favorable to the prosecution. Because a rational juror could have concluded Simmons did not flee out of fear of Simpson, we reject Simmons' argument that her flight should not be considered.

A police manhunt, lasting approximately four hours, was organized to search for Simmons. McKenzie testified that the police searched "[t]hroughout the night -- out there on the top of the hill." A police helicopter from Longview arrived at the scene approximately ten minutes after Simmons absconded but was only briefly involved in the search. Shortly after the helicopter arrived, it was recalled to Longview. Two police officers with a tracking dog traveled approximately two miles west until the dog lost the scent it was following. Several police officers followed these two officers in their cars. Other police officers searched along the interstate east of the traffic stop for approximately three miles. Police officers visited a nearby

7

abandoned house, a nearby mobile home park, and several houses in the area. One of the houses had "a lot of dogs," and the owner informed the police that the dogs had not been barking at anything. McKenzie visited the local gas stations and truck stops to inform the clerks of the suspect. The gas station where Simmons was apprehended was visited twice by McKenzie prior to Simmons' arrival at that station. Describing Simmons' condition, McKenzie testified, "[S]he was dirty. I could see that she did have mud on her clothes, and she looked pretty much resigned that she's -- that we were there to get her or pick her up."

Flight from the location of the contraband is persuasive evidence from which a jury could infer that Simmons realized she had been caught jointly possessing the cocaine and that she fled in an attempt to avoid prosecution. *See Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989) ("Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn.") (citations omitted). Evidence of flight alone will not support a guilty verdict. *Id.*; *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1979); *Holloway v. State*, 525 S.W.2d 165, 167 (Tex. Crim. App. 1975); *Hill v State*, 161 S.W.3d 771, 776 (Tex. App.— Beaumont 2005, no pet.). But it is clear that flight from the scene of a crime is a circumstance from which an inference of guilt can be drawn by a fact-finder. *Foster*, 779 S.W.2d at 859; *Valdez*, 623 S.W.2d at 321. The fact that Simmons fled the scene after drugs were found in the vehicle is not the only circumstance for the jury to consider. She was a passenger in a rented vehicle, which contained a large quantity of cocaine, driven by a person with an extensive criminal history. Viewed in a light most favorable to the jury's verdict, Simmons' flight provides a strong link to the contraband.

8

Simmons relies on *Jenkins v. State*, 76 S.W.3d 709, 713 (Tex. App.—Corpus Christi 2002, pet. ref'd), in which the defendant was the passenger in a car containing contraband and the only affirmative link to that contraband was the defendant's nervousness. *Id*. Similar to this case, more affirmative links connected the driver to the contraband than the passenger.[6] *Id*. Also similar to this case, the contraband was secreted, and there was no direct evidence that the defendant knew of the existence of the contraband. *Id*. There is a significant difference, though, between *Jenkins* and this case. *Jenkins* explicitly notes that the defendant "did not attempt to flee." *Id*. at 717. This case is distinguishable from *Jenkins* because Simmons did flee the scene.

Simmons argues that the absence of numerous of the affirmative links should be considered. As noted above, the list of affirmative links is not exclusive. Appellate courts do not balance the absent affirmative links against the affirmative links that are present. *Wiley v. State*, 388 S.W.3d 807, 814 (Tex. App.—Houston [1st Dist.] 2012, no pet.). In other words, the absence of various affirmative links is not evidence of innocence. *Id.*

The flight, when considered with the other facts, is sufficient evidence tending to connect Simmons to the contraband. We conclude that the evidence, viewed in a light most favorable to the prosecution, is sufficient. A rational juror could have found Simmons guilty as a principal beyond a reasonable doubt.

---

[6]The Troopers found $2,200.00 in Davis' possession.

For the reasons stated, we affirm.

Jack Carter
Justice

Date Submitted:    January 7, 2014
Date Decided:     February 19, 2014

Do Not Publish